UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael L. Carpenter,

Petitioner,

v.

Vermont Department of Corrections,
Bennington District Court,

Respondents.

Civil Action No. 2:21–cv–111–cr–kjd

## REPORT AND RECOMMENDATION
(Doc. 6)

Michael Carpenter, representing himself, has filed a Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 against Respondents Vermont Department of Corrections and

Bennington District Court.  (Doc. 1.)  Carpenter's Petition asserts errors arising from

proceedings in the Superior Court.  (*See id.*)  Respondents request dismissal of the Petition,

arguing that Carpenter's claims are barred by the statute of limitations, procedurally defaulted, or

otherwise without merit.  (Doc. 6.)  Carpenter has not responded to Respondents' Motion to

Dismiss.[1]

---

[1]  Carpenter filed the Petition on April 13, 2021.  (Doc. 1.)  At the time he filed the Petition, Carpenter resided at Southern State Correctional Facility in Springfield, Vermont.  (*Id.* at 1.)  On April 14, 2021, Carpenter advised the Court that he had moved to Northeast Regional Correctional Facility in St. Johnsbury, Vermont. (Docket Entry dated April 14, 2021.)  The Vermont Department of Corrections filed its Motion to Dismiss the Petition on July 13, 2021 (Doc. 6), but Carpenter did not file a response.  Upon Clerk's Office inquiry to DOC counsel, it was determined that Carpenter may have moved from the facility where service of the Motion to Dismiss was effectuated in July 2021.  DOC counsel subsequently determined that Carpenter was no longer incarcerated and served him "by having his parole officer hand him a physical copy" on April 26, 2022.  (Doc. 8.)  As of the filing of this Report and Recommendation, Carpenter has not filed a response to the Motion to Dismiss.

During review of Carpenter's Petition, the Court determined that the Petition as filed omitted pages 10–13. On June 28, 2022, the Court issued an Order providing Carpenter an opportunity to submit the omitted pages by July 15, 2022.  Carpenter has not submitted pages 10–13 of the Petition.

For the reasons explained below, I recommend that Respondents' Motion to Dismiss (Doc. 6) be GRANTED and Carpenter's Petition (Doc. 1) be DISMISSED.

**Factual and Procedural Background**

I.    **State Proceedings[2]**

A.    **Criminal Conviction and Direct Appeal**

In April 2011, Carpenter pled guilty to the felony offense of violating an abuse-prevention order (VAPO) and five misdemeanors. *State v. Carpenter*, 2013 VT 28, ¶ 1, 193 Vt. 484, 485, 70 A.3d 1023, 1024. The Relief from Abuse (RFA) order prohibited Carpenter from contacting the plaintiff, his ex-girlfriend. "The violation was based on petitioner's phone call to the plaintiff in violation of the no-contact provision." *In re Carpenter*, No. 2015-325, 2016 WL 7363915, at *1 (Vt. Dec. 16, 2016). In the plea agreement, the parties agreed that the felony sentence could be subject to enhancement under Vermont's Habitual Offender Act, 13 V.S.A. § 11. Carpenter received an enhanced sentence of five to fourteen years' imprisonment. On direct appeal to the Vermont Supreme Court, he argued that the Habitual Offender Act did not authorize enhancing his minimum sentence beyond the statutory maximum for the underlying offense. *Carpenter*, 2013 VT 28, ¶ 4. The Vermont Supreme Court rejected this argument and affirmed Carpenter's sentence on April 12, 2013. *Id.* ¶ 10.

B.    **Petitions for Postconviction Relief**

During the pendency of his direct appeal, Carpenter filed a postconviction-relief petition in September 2011. The petition was stayed until the appeal's resolution and was consolidated

---

[2] Unless otherwise noted, this factual summary is derived from the Vermont Supreme Court's opinion in *In re Carpenter*, 2018 VT 91, 208 Vt. 291, 197 A.3d 865. The opinion addresses Carpenter's appeal of the dismissal of his second petition for postconviction relief (PCR), recounting the procedural history of Carpenter's direct appeal of his sentence and PCR proceedings.

with another petition that he filed in May 2013.  *In re Carpenter*, 2016 WL 7363915, at *1.  In

both petitions, he argued that:

> (1) his sentence was excessive because the VAPO charge was based on a
> nonthreatening telephone call and because the sentencing court unduly relied upon
> his prior criminal history; and (2) his conviction should be overturned because his
> diminished capacity prevented him from being aware of the RFA order he was
> charged with violating.

*Id.*  The PCR court rejected both arguments and further determined that Carpenter had failed to

prove his related ineffective-assistance-of-counsel claims.  *Id.*  Carpenter did not appeal the

decision.  *Id.*

Carpenter filed another PCR petition in June 2015, which the Superior Court dismissed as

a successive petition.  *Id.* at *2.  On appeal, the Vermont Supreme Court remanded the petition to

the Superior Court because it found that the petition presented new arguments that Carpenter had

not raised in the initial petition.  *Id.*  Specifically, Carpenter's new argument challenged the

felony VAPO charge on the grounds that the no-contact provision in the underlying RFA order

was unlawful, and his counsel was ineffective in not challenging it.  *Id.*; *see In re Carpenter*,

2018 VT 91, ¶ 4.  The Vermont Supreme Court held that Carpenter had "waived his right to

directly challenge the charges to which he pled guilty," but the court remanded the petition to

permit the trial court to consider his ineffective-assistance claim related to the offense of

conviction.  *In re Carpenter*, 2016 WL 7363915 at *3.

On remand, the PCR court dismissed Carpenter's petition for abuse of the writ based on

the collateral bar rule.  *In re Carpenter*, 2018 VT 91, ¶ 6.  "Under the collateral bar rule, a person

is generally barred from collaterally challenging the validity of a court order in defense to a

contempt proceeding for violating the order."  *Id*. ¶ 13.  However, the Vermont Supreme Court

"has recognized that where a party's ability to effectively challenge an order is constrained, the

party may be able to challenge it in a collateral proceeding arising from a violation of the order."

*Id.* ¶ 14.  The PCR court found that "any argument in the VAPO prosecution that the no-contact provision in the underlying RFA was invalid would not have succeeded."  *Id.* ¶ 6.  In determining that the collateral bar rule prevented Carpenter from challenging the validity of the underlying RFA order in the prosecution for violating the order, the PCR court further concluded that "no exception to [the] bar applied because [Carpenter] had ample opportunity to challenge the order before violating it."  *Id.*  The Vermont Supreme Court affirmed, explaining that "[b]ecause [Carpenter] had an adequate and effective remedy to challenge the no-contact provision of the RFA order, he [was] barred from collaterally challenging its validity in th[e] PCR proceeding."  *Id.* ¶ 19.

Carpenter also raised two ineffective-assistance arguments, which the Vermont Supreme Court similarly dismissed as an abuse of the writ.  He first argued in his PCR petition that trial counsel should have collaterally challenged the no-contact provision's validity.  *Id.* ¶¶ 4, 5.  The Vermont Supreme Court concluded that, because Carpenter was collaterally barred from challenging the order's no-contact provision, he "failed to show he suffered prejudice as a result of the ineffective assistance of his counsel."  *Id.* ¶ 19.  On appeal of his PCR petition, he also contended that his trial counsel was ineffective because he failed to argue that "the RFA order allowed him to have contact with his ex-girlfriend for the purpose of discussing their children and, because his girlfriend hung up the phone right after he greeted her, it is entirely plausible that he called to talk about his children."  *Id.* ¶ 19 n.8.  While the Vermont Supreme Court did not address this argument because it had not been developed in the PCR court, the court clarified that, "given [its] resolution of the prejudice issue, this argument, if successful, would not result in a different outcome."  *Id.*

Carpenter filed another PCR petition over two years later on October 13, 2020.  *See* Doc. 1-2 (*In re Carpenter*, No. 20-cv-0620 (Super. Ct. Oct. 13, 2020)).  Carpenter's counsel

voluntarily dismissed that petition two months later, explaining that the matter was *res judicata* given the Vermont Supreme Court's 2018 ruling on his prior PCR petition. (*Id.*) The case was closed on December 15, 2020. (*Id.*)

## II.    Federal Petition for Writ of Habeas Corpus

Carpenter filed this Petition for a Writ of Habeas Corpus on April 13, 2021. (Doc. 1.) He appears to claim that he was wrongfully convicted of the felony VAPO charge, and that his counsel was ineffective in challenging the factual basis of the conviction.[3] (Doc. 1 at 5–7.) He lists "[a]n ex parte order" as his first ground for habeas relief, claiming that he "called [the] victim of temporary order, but [it] states on order [he] may do so to d[o] with our twin boys." (*Id.* at 5.) Carpenter explains that he did not raise this issue on direct appeal because he "didn[']t realize it," he "figured it out on [his] own," and his "[l]awyer was worthless." (*Id.* at 6.) He claims that he instead raised it in his 2020 postconviction proceedings. (*Id.*; *see also id.* at 3 ("I called victim to d[o] with our children . . . . I couldn't be charged but was with a felony . . . yet . . . may have contact to d[o] with children[.] [E]ven the case worker wrote a statement saying I cared for safety of children[.]").)

Carpenter has not explicitly articulated a second ground for relief, but according to his statement of supporting facts, he appears to claim that his offense conduct did not support the felony VAPO charge:

> How can you charge me with a felony on a VAPO when it say[s] right on [the] ex parte order may have contact to d[o] with children[.] I said hello, she hung up[,] called cops[.] [M]y caseworker even wrote a statement saying I was worried about my kids, the only charge I should have rec[ei]ved was a misdemeanor violation of court conditions, of no contact.

---

[3] Respondents interpret Carpenter's Petition to also challenge the ex parte nature of the abuse prevention order. (Doc. 6 at 3–4.) Although Carpenter's Petition does state "[a]n ex parte order" as the first ground for relief (Doc. 1 at 5), the supporting facts in the Petition indicate that he is not contesting the legality of the order, but whether his conduct violated the order.

(*Id.* at 7.)  He did not raise this claim on direct appeal because he "didn[']t know at the time[,] and [he] told [his] original lawyer," who "pretty much said it wasn[']t a case."  (*Id.*)  Carpenter claims he raised this issue in his second PCR petition, which the Vermont Supreme Court reviewed in 2018.  (*Id.*; *see also id.* at 4 ("[O]n ex parte order, called victim due to our children, when she answer[ed] I said hello, she hung up, I didn[']t get this for I told my caseworker she had wrote a statement.").)

Although he filed this federal habeas petition well over a year after his conviction became final, Carpenter contends that the one-year statute of limitations under § 2244(d) does not bar his Petition.  (*Id.* at 9.)  He claims that he "never [k]new" the Vermont Supreme Court denied his PCR petition in 2018 and only "just found that out in December of 2020, over 2 y[ea]rs later." (*Id.* at 9–10.)  Carpenter then "tried filing another postconviction" petition, but "[his] lawyer Mark Furlan"—his counsel in several PCR proceedings—"talked [him] out of it."  (*Id.* at 10.); *see In re Carpenter*, 2018 VT 91, ¶ 5.  Carpenter thus asserts that he was "wrongly convicted." (Doc. 1 at 10.)  Below these claims in the form petition, Carpenter circled subsections (B) and (D) of 28 U.S.C. § 2244(d)(1), which correspond to "the date on which the impediment to filing an application created by State action . . .  is removed" and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  (*Id.*)

Carpenter attaches the Vermont Supreme Court's 2018 decision and his Notice of Voluntary Dismissal of the 2020 PCR filing, signed by Attorney Furlan.  (Docs. 1-1, 1-2.)  He includes a handwritten note on the Notice: "I tried to file another postconviction [petition,] but I've already exhausted that avenue[.]  [P]lus this lawyer Mark Furlan, is the reason[] I didn[']t get anywhere in the [first] place and he admitted it to me . . . ."  (Doc. 1-2.)  Carpenter requests

that the Court "vacate [his] current sentence on the grounds of excessive sentencing and [that he was] illegally sentenced." (Doc. 1 at 11.)

In their Motion to Dismiss the Petition, Respondents first contend that all of Carpenter's claims are barred by the statute of limitations. (Doc. 6 at 4–6.) Respondents also argue that even if the claims are timely, they are either exhausted or deemed exhausted and therefore procedurally defaulted. (*Id.* at 7–10.) Finally, Respondents assert that the Petition should be dismissed because Carpenter has not shown that the state courts' adjudication of his claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1)); (*see* Doc. 6 at 10–11.)

## Discussion

### I.    Legal Standard

Under 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000).[4] "[A] determination of a factual issue made by a State court shall be presumed to be correct."

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

28 U.S.C. § 2254(e)(1).  The petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

"'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412).  A state-court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or decides a case differently than the Supreme Court on "materially indistinguishable" facts. *Williams*, 529 U.S. at 405.  Relief is appropriate under the "unreasonable application" clause of § 2254(d)(1) "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  When reviewing habeas petitions brought under § 2254, federal courts must be "highly deferential" when "evaluating state-court rulings"; the statute "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II.   Although Carpenter appears to be released on parole, he remains "in custody" for purposes of 28 U.S.C. § 2254.

According to the DOC's April 26, 2022 Revised Certificate of Service, Carpenter is currently on parole.[5]  Therefore, a threshold issue is whether Carpenter is "in custody" for purposes of habeas review.  A petitioner "must be 'in custody' in order to invoke habeas jurisdiction of the federal courts." *Ogunwomoju v. United States*, 512 F.3d 69, 73 (2d Cir. 2008) (quoting 28 U.S.C. § 2254(a)).  A petitioner on parole satisfies the "in custody" requirement of

---

[5]  The Vermont DOC electronic Inmate Locator also indicates that Carpenter is currently under the supervision of Bennington County Probation and Parole.  *See* Offender Locator of Agency of Human Services: Department of Corrections, State of Vermont, doc.vermont.gov (last visited July 26, 2022) (follow "Offender Locator" hyperlink; then search for "Michael Carpenter").

the habeas statute.  *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in . . . 'custody' . . . within the meaning of the habeas corpus statute . . . ."); *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'").

Accordingly, as a parolee, Carpenter is "in custody" for purposes of 28 U.S.C. § 2254.

## III.    Carpenter's Petition is barred by AEDPA's one-year statute of limitations.

Carpenter filed his Petition over two years after the resolution of his prior request for postconviction relief.  He has not shown why his Petition should nevertheless be found timely under the relevant provisions of § 2244(d)(1).  Carpenter also has not satisfied the high bar to demonstrate that the filing deadline should be equitably tolled to deem his Petition timely.

### A.    Carpenter's Petition is untimely under 28 U.S.C. § 2244(d)(1).

Habeas petitions are subject to a one-year limitations period.  This period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under § 2244(d)(1)(A), a judgment is "final" after a defendant's direct appeal in the state's highest court and either the completion of proceedings before the United

States Supreme Court if the petitioner seeks a writ of certiorari, or the expiration of the time to seek Supreme Court review. *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003). The latter period expires 90 days after the completion of a direct appeal. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not counted toward the limitations period. 28 U.S.C. § 2244(d)(2). Thus, the one-year limitations period excludes the time during which the postconviction petition is under review. *Saunders v. Senkowski*, 587 F.3d 543, 548–49 (2d Cir. 2009). However, "a prisoner will not be able to revive an expired limitation period by simply filing a state petition in conformity with basic procedural requirements." *Bennett v. Artuz*, 199 F.3d 116, 122 (2d Cir. 1999) (quoting *Villegas v. Johnson*, 184 F.3d 467, 472–73 (5th Cir. 1999)).

Carpenter filed his § 2254 Petition more than one year after his judgment of conviction was final. The Vermont Supreme Court affirmed his convictions on April 12, 2013. *Carpenter*, 2013 VT 28, ¶ 10. He filed a PCR petition in May 2013 (which the trial court consolidated with a petition he filed in 2011). The court denied the petition on November 20, 2014. *In re Carpenter*, 2018 VT 91, ¶ 3. He filed another PCR petition in June 2015, which the Vermont Supreme Court denied on August 31, 2018. *Id.* ¶ 4. Even assuming that the limitations period was tolled for the entire period between the filing of the consolidated 2013 PCR petitions and the Vermont Supreme Court's denial of his last PCR petition on August 31, 2018, *see Saunders*, 587 F.3d at 548–49; 28 U.S.C. § 2244(d)(2), over two years elapsed between the August 2018 decision and the filing of his most recent PCR petition on October 13, 2020. Given that the 2020 petition cannot "revive [the already] expired limitation period," *see Bennett*, 199 F.3d at 122, Carpenter's April 13, 2021 Petition is untimely under § 2244(d)(1)(A).

Under a liberal construction of his Petition, Carpenter appears to assert that the Petition is nevertheless timely under 28 U.S.C. § 2244(d)(1)(B) or (D). (*See* Doc. 1 at 10 (circling these provisions on the form petition).) In doing so, he first suggests that the limitations period should run from "the date on which the impediment to filing an application created by State action . . . is removed, if the applicant was prevented from filing by such State action." (*See* Doc. 1 at 10 (quoting 28 U.S.C. § 2244(d)(1)(B)).) Under this provision, it is the petitioner's burden to demonstrate the impediment created by State action. *Williams v. Ercole*, 486 F. App'x 208, 211 (2d Cir. 2012); *Fellows v. Baker*, Civil Action No. 2:20-cv-139-wks-jmc, 2021 WL 4200875, at *8 (D. Vt. Mar. 10, 2021), *report and recommendation adopted*, 2021 WL 4199285 (D. Vt. Sept. 15, 2021). Carpenter has made no showing of a specific impediment—nor one created by State action—that prevented his timely filing. Therefore, § 2244(d)(1)(B) does not apply to render his Petition timely.

Carpenter further suggests that the limitation period should run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (*See* Doc. 1 at 10 (quoting 28 U.S.C. § 2244(d)(1)(D)).) The "factual predicate" of a claim pertains to "vital facts," not "new information . . . that merely supports or strengthens a claim that could have been properly stated." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). Relevant here, "[c]onclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." *Id.* Carpenter alleges only that the purpose of the phone call giving rise to the RFA violation was to discuss his children. (Doc. 1 at 5, 7.) As a result, he asserts that the call either fell within the order's no-contact exception and was therefore lawful (*see id*. at 5), or at most should have resulted in "a misdemeanor violation of court conditions" (*id.* at 7). However, these facts necessarily were known to Carpenter at the time of the phone call in 2011. *See Rivas*, 687 F.3d at 535. In fact,

Carpenter admits that he presented this information to his "original lawyer," who then "said it wasn't a case" (Doc. 1 at 7), thus acknowledging that he knew the factual predicate to his claim years before he filed his federal Petition in April 2021. His attempt to draw new conclusions from preexisting facts does not establish a factual predicate triggering the limitations period under § 2244(d)(1)(D). *See id.* As a result, § 2244(d)(1)(D) does not provide a basis to deem the Petition timely.

Accordingly, Carpenter's Petition is not timely under § 2244(d)(1).

**B.    Equitable tolling is not available for Carpenter's untimely petition.**

Carpenter also appears to assert that his untimely filing warrants equitable tolling. (Doc. 1 at 9–10.) Equitable tolling permits a court to consider an otherwise untimely habeas petition if the petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The petitioner must overcome "a high bar" to demonstrate "circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

An attorney's conduct related to a petitioner's case may be "so outrageous and incompetent" that it rises to a "truly extraordinary" level, meriting equitable tolling. *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004); *see also Holland*, 560 U.S. at 651–52. But even under such circumstances, if a petitioner cannot show that he "exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the

extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Carpenter has not demonstrated the extraordinary circumstances necessary to warrant equitable tolling. He claims only that he "just found . . . out in December of 2020, over [two] y[ear]s later" that the Vermont Supreme Court had ruled on his 2015 PCR petition. (Doc. 1 at 9–10.) He does not explain what circumstances could have caused him to learn the outcome of his appeal years after the decision, let alone that any such circumstances were extraordinary, *see Holland*, 560 U.S. at 649, and nothing in the record indicates that this delay was attributable to his PCR attorney, *see Doe*, 391 F.3d at 159. Even if he had made such a showing, Carpenter has not offered anything to demonstrate that he "exercised reasonable diligence in attempting to file after [such] extraordinary circumstances began." *See Valverde*, 224 F.3d at 134. With "the link of causation between [any possible] extraordinary circumstances and the failure to file . . . broken," *id.*, Carpenter falls far short of the "high bar" he must overcome to warrant equitable tolling, *see Dillon*, 642 F.3d at 363.

## IV.    Carpenter's claims are unexhausted and procedurally barred.

Even if Carpenter's Petition was timely, his claims are not exhausted. Because he is also procedurally barred from pursuing these unexhausted claims in state court, any related federal habeas claims are likewise procedurally defaulted. Finally, Carpenter has not shown cause for the failure to raise these claims on direct appeal, nor has he shown that this Court's determination not to review the claims now would result in a miscarriage of justice.

### A.    While Carpenter's claims have not been fairly presented at the state level, they are nevertheless procedurally barred in state court and are therefore procedurally defaulted.

Generally, a petition for a writ of habeas corpus may not be granted unless "it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

13

§ 2254(b)(1)(A).  To exhaust a claim, a petitioner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."  *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982).  "Fair presentation" requires the petitioner to "have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  *Id.*  Additionally, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" for the claims asserted in the federal petition.  *O'Sullivan*, 526 U.S. at 845.

A petitioner may still bring unexhausted claims where "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(i)–(ii).  For example, "a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."  *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  Nevertheless, if "a petitioner has failed to properly exhaust his claims in state court, and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the claim 'is procedurally defaulted' for the purpose of federal habeas review."  *Fellows*, 2018 WL 1157788, at *5 (quoting *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997)); *see Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

Under Vermont law, a claim that has not been raised on direct appeal is "barred" if, absent exigent circumstances, "the movant deliberately bypassed the issue on appeal."  *In re*

*Stewart*, 140 Vt. 351, 361, 438 A.2d 1106, 1110 (1981).  An exception applies to claims of

ineffective assistance of trial counsel, which may be raised initially in postconviction

proceedings.  *See State v. Spooner*, 2010 VT 75, ¶ 23 n.5, 188 Vt. 356, 366, 8 A.3d 469, 476

(noting that "the proper avenue of raising the issue of ineffective assistance of counsel is through

a motion for post-conviction relief, and not through a direct appeal of a conviction" (quoting

*State v. Gabaree*, 149 Vt. 229, 232–33, 542 A.2d 272, 274 (1988))).  However, for "claims

raised for the first time in a second or subsequent PCR petition," Vermont courts prohibit claims

that comprise an "abuse of the writ."  *In re Towne*, 2018 VT 5, ¶ 25, 206 Vt. 615, 627, 182 A.3d

1149, 1158.  To avoid this bar, a "petitioner [must] show cause for failing to raise the claim

previously and actual prejudice from the default."  *Id.* (citing *In re Laws*, 2007 VT 54, ¶ 22, 182

Vt. 66, 78, 928 A.2d 1210, 1218–19).  "Under the cause prong, the petitioner must show 'some

objective factor external to the defense' that 'impeded counsel's efforts to raise the claim in the

earlier proceeding.'"  *Id.* (quoting *In re Laws*, 2007 VT 54, ¶ 20).  To show actual prejudice, the

petitioner must do more than demonstrate that "the alleged errors . . . 'created a possibility of

prejudice,' but rather that they worked to the petitioner's 'actual and substantial disadvantage,'

poisoning the 'entire trial with errors of constitutional dimensions.'"  *Id.* (quoting *In re Laws*,

2007 VT 54, ¶ 20).

  Carpenter's direct appeal from his conviction challenged the application of Vermont's

Habitual Offender Act to the sentence he received.  *Carpenter*, 2013 VT 28, ¶ 4.  He did not

raise on appeal the grounds asserted in the present § 2254 Petition.  His subsequent PCR

petitions also alleged that the contents of the RFA order did not comply with Vermont law; the

petitions did not assert that his phone call to the victim was legal under the order.[6] *In re Carpenter*, 2016 WL 7363915, at *1–2. It was only on appeal of his second PCR petition that Carpenter claimed that he was innocent because "the RFA order allowed him to have contact with his ex-girlfriend for the purpose of discussing their children." *In re Carpenter*, 2018 VT 91, ¶ 10 n.8. Even then, rather than separately bringing this actual-innocence claim, Carpenter asserted that his trial counsel was ineffective for failing to raise it. And although Carpenter brought this ineffective-assistance-of-trial-counsel claim in a PCR proceeding, *see Spooner*, 2010 VT 75, ¶ 23 n.5, he raised this claim only during the appeal of the second PCR petition. Therefore, Carpenter's actual-innocence claim and ineffective-assistance claim have not received "one complete round" of state-level review before he presented them in his federal habeas petition. *See O'Sullivan*, 526 U.S. at 845. His claims therefore were not fairly presented to the state courts and are not exhausted at that level.

These unexhausted claims are also now procedurally barred in state court. Carpenter's actual-innocence claim is based on facts known to him throughout proceedings in Superior Court but never raised on direct appeal or developed in the PCR court. *See Stewart*, 140 Vt. at 361. Further, as the Vermont Supreme Court explained in its decision affirming the dismissal of Carpenter's second PCR Petition, the claim that his trial counsel failed to raise this actual-innocence claim "was not developed or addressed by the PCR court" and therefore would not be considered on appeal. *In re Carpenter*, 2018 VT 91, ¶ 19 n.8. While the Vermont Supreme Court declined to review this specific ineffective-assistance argument, it explained that its abuse-

---

[6] Respondents contend that any challenge to the order in this Court is procedurally defaulted because the Vermont state courts have found that the collateral bar rule prevents any further challenge to the order. (Doc. 6 at 9–10.) However, it does not appear that Carpenter is challenging the ex parte order itself. Rather, he appears to argue that he was "illegally sentenced" because his call fell within the exception for conversations concerning his children. (Doc. 1 at 10.) Nevertheless, for the reasons stated in this Report and Recommendation, his claim remains procedurally barred.

of-the-writ holding in the 2018 appeal would nonetheless have prevented him from obtaining

habeas relief on this ground. Specifically, because he did not show he suffered prejudice from

ineffective counsel from other alleged errors, this separate claim "would not result in a different

outcome." *Id.* His unexhausted ineffective-assistance claim is therefore barred as an abuse of

the writ; given the Vermont Supreme Court's prejudice finding, "it is clear that the unexhausted

claim is procedurally barred by state law and, as such, its presentation in the state forum would

be futile." *See Aparicio*, 269 F.3d at 90; *Fellows*, 2021 WL 4200875, at *12 (finding that

"additional claims of ineffective assistance of trial counsel that were not asserted in his first PCR

Petition" were an abuse of the writ and thus "procedurally barred under state law").

Consequently, both of Carpenter's claims are deemed exhausted and are procedurally

defaulted.

## B. The Court may not consider Carpenter's procedurally defaulted claims because he has not shown cause and prejudice or that a miscarriage of justice would result from a failure to consider his claims.

Notwithstanding procedural default, a court may nevertheless consider a petitioner's

habeas claims if he "can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Carpenter has made neither showing.

### 1. Carpenter has not demonstrated cause for his procedural default.

To establish "cause" for the default, a petitioner "must 'show that some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"

*Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488

(1986)). "A factor is external to the defense if it 'cannot fairly be attributed to'" the petitioner.

*Id.* (quoting *Coleman*, 501 U.S. at 753). Attorney error may establish cause "only if that error

amounted to a deprivation of the constitutional right to counsel."  *Id.*  However, an ineffective-assistance claim itself must first "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (quoting *Carrier*, 477 U.S. at 489).

An ineffective-assistance-of-counsel claim requires a petitioner to demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Under this test, the petitioner must establish "the identified acts or omissions were outside the *wide* range of professionally competent assistance."  *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 690).  Because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689; *cf. Aparicio*, 269 F.3d at 95 ("Counsel is not obliged to advance every nonfrivolous argument that could be made.").  In the guilty-plea context, a petitioner establishes prejudice under the second *Strickland* prong by demonstrating "a reasonable probability that were it not for counsel's errors, [the petitioner] would not have pled guilty and would have proceeded to trial."  *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Ordinarily, because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," *Coleman*, 501 U.S. at 752, "attorney error committed in the course of [those] proceedings . . . cannot supply cause to excuse a procedural default that occurs in those proceedings," *Davila*, 137 S. Ct. at 2065 (citing *Coleman*, 501 U.S. at 755).  A narrow exception exists where state law requires prisoners to raise—or the state's procedural requirements make it

unlikely that those prisoners will raise—claims of ineffective assistance of trial counsel in initial-review collateral proceedings, rather than on direct appeal. *Martinez v. Ryan*, 566 U.S. 1, 16 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). In such cases, a petitioner's prior failure to raise an ineffective-assistance-of-trial-counsel claim is not barred by procedural default if that "default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Davila*, 137 S. Ct. at 2065 (citing *Martinez v. Ryan*, 566 U.S. at 17). However, this exception applies only to claims of ineffective assistance of trial counsel. *Id.* at 2069.

Liberally construing Carpenter's Petition, he appears to assert that his trial counsel was ineffective in failing to argue that his phone call fell within the exception to the order's no-contact provision. (*See* Doc. 1 at 6, 7.) Carpenter raised this claim during the appeal of his second PCR proceeding. Because his ineffective-assistance claim "was not developed or addressed by the PCR court," the Vermont Supreme Court "d[id] not address it." *In re Carpenter*, 2018 VT 91, ¶ 10 n.8. Given that neither the Superior Court nor the Vermont Supreme Court reviewed this claim, it was not adequately presented at the state level. *See Edwards*, 529 U.S. at 452. Accordingly, this ineffective-assistance claim cannot establish cause for his procedurally defaulted claims.

Even if Carpenter could establish cause for his procedurally defaulted claims, he has not demonstrated that his trial counsel rendered constitutionally deficient representation. Carpenter asserts that he told counsel that he did not violate the original order by contacting his girlfriend, but the lawyer said the claim "wasn't a case." (Doc. 1 at 7.) Carpenter then pled guilty, after which counsel argued that Carpenter's minimum sentence should not be enhanced. *See Carpenter*, 2013 VT 28, ¶¶ 2–3. Carpenter alleges only that counsel rejected his suggestion to present a defense based on whether he violated the order. Without more, he has not overcome the presumption that his attorney's choice not to advance this defense fell within "the wide range

19

of reasonable professional assistance" or was anything more than strategic advocacy. *See Strickland*, 466 U.S. at 689; *see also Zimmerman v. Burge*, 492 F. Supp. 2d 170, 188 (E.D.N.Y. 2007) ("That petitioner may have disagreed with counsel's choices does not compel a contrary conclusion in this regard, as the determinations made by counsel, exercising professional judgment, were appropriately his to make."). More importantly, Carpenter does not argue that counsel's choices influenced his choice to plead guilty in any way. *See Arteca*, 411 F.3d at 320. He thus has not shown that his trial counsel's decision caused him any prejudice.

Nor has Carpenter shown that his PCR representation was deficient such that his procedurally defaulted claims should proceed. He claims only that his PCR attorney "Mark Furlan, is the reason, [he] didn[']t get anywhere in the [first] place and he admitted it to [Carpenter]." (Doc. 1-2 at 1.) This conclusory assertion does not address whether Attorney Furlan advocated that Carpenter received deficient representation in the trial court. In fact, it does not clarify what Carpenter asserts Attorney Furlan did or failed to do in the course of his representation. Because he has not claimed that his PCR counsel's failures fell outside of this narrow exception, Attorney Furlan's asserted errors "cannot supply cause to excuse a procedural default." *See Davila*, 137 S. Ct. at 2065.

Carpenter has therefore failed to show cause for his procedurally defaulted claims.

2.    **Carpenter has not demonstrated that this Court's failure to consider his claims will result in a fundamental miscarriage of justice.**

The fundamental-miscarriage-of-justice exception to procedural default "is 'extremely rare' and should be applied only in 'the extraordinary cases.'" *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (quoting *Schlup v. Delo*, 513 U.S. 298, 321–22 (1995)). A claim of actual innocence in support of this exception "must be both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 521, 538 (2006)). "For the claim to be

'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . .'" *Id.* (quoting *House*, 547 U.S. at 538); *see also McQuiggin v. Perkins*, 569 U.S. 383, 400–01 (2013).

Carpenter has not argued that failure to consider his claims will result in a fundamental miscarriage of justice. Nor has he presented any new evidence raising a credible and compelling claim of actual innocence. Carpenter's claim of innocence is premised on the assertion that the call to his ex-girlfriend to discuss their children did not violate the order. (*See* Doc. 1 at 5–7.) Even assuming this was "new reliable evidence," Carpenter has not demonstrated that "in light of th[is] evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *See Rivas*, 687 F.3d at 541. Therefore, Carpenter's claim does not meet the extraordinary evidentiary requirement for an actual-innocence claim. *See Sweet*, 353 F.3d at 142. Because Carpenter has not demonstrated that a failure to consider his claim would result in a miscarriage of justice, he cannot overcome the procedural bar to his claims.

Thus, even if Carpenter's claims were not time-barred, they should be dismissed as procedurally defaulted.

## Conclusion

For these reasons, I recommend that Respondents' Motion to Dismiss (Doc. 6) be GRANTED and Carpenter's Petition (Doc. 1) be DISMISSED.

I further recommend denial of a certificate of appealability. In a § 2254 proceeding, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a certificate will

not issue unless reasonable jurists could debate whether the petition should have been resolved in

a different manner, or the issues are "adequate to deserve encouragement to proceed further."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For the reasons stated above, it is my

recommendation that reasonable jurists could not debate whether Carpenter's Petition should

have been resolved in a different manner.

Dated at Burlington, in the District of Vermont, this 27th  day of July 2022.


*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).